*1166
 
 OPINION
 

 Per Curiam:
 

 On May 27, 1993, petitioners Linda Ciaffone, Joseph Ciaffone, and Carla Ciaffone, individually, and Kathleen Hornbrook as Special Administratrix, on behalf of the estate of Joseph Ronald Ciaffone, the deceased, (“Ciaffones”) filed a wrongful death action against Skyline Restaurant & Casino (“Skyline”) for the shooting of Joseph Ciaffone.
 
 [1]
 
 The law firm of Gillock, Koning, Markley & Killebrew, RC. (“Gillock firm”) represented the Ciaffones while Skyline retained the law firm of Thorndal, Backus, Armstrong & Balkenbush (“Thorndal firm”). The case was scheduled for trial in April 1996, but was continued until December 30, 1996.
 

 On February 11, 1995, Ingrid Decker (“Decker”) was employed by the Thorndal firm through a “temp” agency and worked in the word processing unit. On March 25, 1995, Decker was hired directly by the Thorndal firm to serve as a legal secretary to attorney David Clark (“Clark”). Although Clark was not assigned to the Ciaffone v. Skyline Restaurant & Casino (“Ciaffone v. Skyline”) litigation, Decker admits that she performed some work on Ciaffone v. Skyline in a limited “overflow” secretarial capacity.
 

 After Clark left the Thorndal firm, Decker remained for several months. Decker sat from March 18, 1996, to March 25, 1996, as a floating secretary to attorney of record in Ciaffone v. Skyline, Janiece Marshall (“Marshall”). Although Decker claims she did not do any work on Ciaffone v. Skyline while working for Marshall, she does admit that she may have done some work on Ciaffone v. Skyline in her brief duties as a word processor at the Thorndal firm.
 

 On September 9, 1996, Decker began her employment at the Gillock firm as a secretary to Julie A. Mersch (“Mersch”), attorney of record in Ciaffone v. Skyline. The Gillock firm made
 
 *1167
 
 efforts to screen Decker from any involvement in the Ciaffone v. Skyline case; the trial court found these efforts sufficient, despite some minor involvement by Decker with the case.
 

 On November 25, 1996, the Thorndal firm moved to disqualify the Gillock firm based on Decker’s involvement in Ciaffone v. Skyline and the absence of any authority in Nevada recognizing nonlawyer screening. Judge Sobel, based on written motions, affidavits, and an informal hearing, ruled as follows:
 

 The Motion to Disqualify poses at least two significant issues.
 

 First, should “screening” be allowed where a nonlawyer is involved? I think it should be permitted, but there is a complete absence, as far as I can tell, of applicable Nevada law permitting it. . . .
 

 Second, was the screening effective with respect to Ingrid Decker? I believe that the screening was effective in this case, and that Decker did not, after taking her new employment, have the significant participation in the case that the nonlawyer had in [Smart Industries Corp. v. Superior Court, 876 P.2d 1176 (Ariz. Ct. App. 1994)].
 

 However, I feel constrained as a trial judge to find that neither by rule or case has our state yet recognized screening. . . .
 

 I believe if screening is to take place with respect to nonlawyers in Nevada, in the face of rules that apparently do not permit it, it should be the Supreme Court, the maker of Supreme Court rules, and not me, who gives permission for screening.
 

 The Motion to Disqualify is therefore granted reluctantly.
 

 Ciaffones then petitioned this court for a writ of mandamus ordering the district court to reinstate the Gillock firm as attorneys of record.
 
 [2]
 

 Preliminarily, we note that mandamus is an appropriate remedy in lawyer disqualification matters. In Cronin v. District Court, 105 Nev. 635, 639 n.4, 781 P.2d 1150, 1152 n.4 (1989), this court stated: “Mandamus is used properly to challenge orders disqualifying attorneys from representing parties in actions that are pending in the district courts.”
 

 Skyline argues that regardless of the efforts taken by the Gillock firm to screen Decker from participation in Ciaffone v. Skyline, no statute or case law exists in Nevada permitting
 
 *1168
 
 nonlawyer screening. Skyline further contends that because Nevada law does not authorize screening when lawyers move from one private firm to another, nonlawyers should be held to the same standard. We conclude that Skyline’s argument correctly states Nevada law.
 

 Although Nevada has not addressed the problem of nonlawyer screening, this court has taken the position in SCR 160(2) that
 
 lawyer screening
 
 is prohibited. In part, SCR 160(2) provides:
 

 When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 156 and 159(2) that is material to the matter.
 

 SCR 156 and 159(2) address the disclosure of confidential and privileged information between the attorney and client.
 

 Additionally, SCR 187 requires lawyers to hold nonlawyer employees to the same professional standards. In relevant part, SCR 187 states:
 

 With respect to a nonlawyer employed or retained by or associated with a lawyer:
 

 1. A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person’s conduct is compatible with the professional obligations of the lawyer;
 

 2. A lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person’s conduct is compatible with the professional obligations of the lawyer. . . .
 

 When SCR 187 is read in conjunction with SCR 160(2), nonlawyer employees become subject to the same rules governing imputed disqualification. To hold otherwise would grant less protection to the confidential and privileged information obtained by a nonlawyer than that obtained by a lawyer. No rationale is offered by Ciaffones which justifies a lesser degree of protection for confidential information simply because it was obtained by a nonlawyer as opposed to a lawyer. Therefore, we conclude that the policy of protecting the attorney-client privilege must be preserved through imputed disqualification when a nonlawyer employee, in possession of privileged information, accepts employment with a firm who represents a client with materially adverse interests.
 

 
 *1169
 
 “Attorney disqualification of counsel is part of a court’s duty to safeguard the sacrosanct privacy of the attorney-client relationship which is necessary to maintain public confidences in the legal profession and to protect the integrity of the judicial process.” Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1576 (D.C. Cir.1984). Moreover, “a client must be secure in the knowledge that
 
 any information
 
 he reveals to counsel will remain confidential.” United States v. Schell, 775 F.2d 559, 565 (4th Cir. 1985) (emphasis added). Therefore, we decline to carve out an exception allowing screening of non-lawyers in situations where lawyers would be similarly disqualified.
 
 [3]
 

 In contrast, Ciaffones cite Smart Industries Corp. v. Superior Court, 876 P.2d 1176 (Ariz. Ct. App. 1994), for the proposition that jurisdictions may expressly prohibit lawyer screening while allowing nonlawyer screening. In justifying this seemingly contradictory position, the
 
 Smart Industries
 
 court adopted the rational of ABA Informal Opinion 88-1526 (June 22, 1988):
 
 Imputed Disqualification Arising From Change in Employment by Nonlawyers Employees.
 

 It is important that nonlawyer employees have as much mobility in employment opportunity as possible consistent with the protection of clients’ interest. To so limit employment opportunities that some nonlawyers trained to work with law firms might be required to leave the careers for which they are trained would disserve clients as well as the legal profession. . . .
 

 Smart Industries,
 
 876 P.2d at 1183.
 

 The reasoning of
 
 Smart Industries
 
 implicitly recognizes that a nonlawyer’s employment opportunities or mobility must be weighed against client confidentiality before disqualification occurs. While this approach may appear fairer to the paralegal/ secretary, it has been roundly criticized for ignoring the realities of effective screening and litigating that issue should it ever arise. For example, one commentator explained that
 
 a majority of courts have rejected screening
 
 because of the uncertainty regard
 
 *1170
 
 ing the effectiveness of the screen, the monetary incentive involved in breaching the screen, the fear of disclosing privileged information in the course of proving an effective screen, and the possibility of accidental disclosures. M. Peter Moser,
 
 Chinese Walls: a Means of Avoiding Law Firm Disqualification When a Personally Disqualified Lawyer Joins the Firm,
 
 3 Geo. J. Legal Ethics 399, 403, 407 (1990). Accordingly, we conclude that adherence to the existing SCR scheme is the better rule. We, therefore, refrain from creating an exception to the imputed disqualification rule embodied in SCR 160. Thus, we conclude a writ of mandamus is not warranted.
 
 [4]
 

 [1]
 

 Less than eighteen seconds after walking into the Skyline Restaurant & Casino, Stephen Knapp (“Knapp”) shot and killed the closest person to the door, Joseph Ronald Ciaffone. Knapp told psychiatrists that the decedent was “giving off bad vibes” and that the killing “was not wrong because Mr. Ciaffone was hurting him, like killing an insect which was biting him.”
 

 [2]
 

 Five days before oral arguments were heard, petitioners filed a motion to expedite our decision. Real parties in interest filed a joinder in this motion on the day of oral arguments. We deny this motion as moot.
 

 [3]
 

 This does not mean that anytime a nonlawyer employee changes law firms that the new employer must be disqualified under SCR 160. First, if the nonlawyer employee never obtained confidential information as defined by SCR 156 and 159, no ethical problem arises requiring disqualification. Second, even if a nonlawyer employee had access to privileged information, SCR 160(4) provides that the former law firm and its client may waive disqualification if they are satisfied the present employer law firm is adequately screening the nonlawyer employee.
 

 [4]
 

 The Honorable A. William Maupin, Justice, did not participate in the decision of this appeal.