OPINION OF THE COURT
James B. Canfield, J.
Defendant Albany-Troy Neurosurgical Associates, P.C. *819 (ATNA) moves to disqualify plaintiffs counsel, Powers & Santola (P&S), on the grounds that P&S recently hired a secretary, Kathleen DeCapita (DeCapita), who was previously employed by ATNA’s counsel, Thuillez Ford (TH), as a secretary/paralegal and assisted the TH attorney on this case.
The crucial issue in this case is whether the same disqualification rules applicable to “lawyers” are or should be applicable to “paralegals” and “secretaries.” ATNA does not charge P&S or DeCapita with any actual ethical violation, but insists that P&S must be disqualified because DeCapita had access to confidential matters contained in this case. ATNA urges that the same rule that applies to lawyers who move from one firm to another should be applied to nonlawyers, regardless of the second firm’s efforts to ensure that no confidences are revealed.
ATNA’s reliance on Glover Bottled Gas Corp. v Circle M. Beverage Barn (129 AD2d 678 [1987]) is misplaced. Glover neither applies the same rule to paralegals nor holds that a paralegal with confidential information who moves to a new law firm automatically disqualifies the new firm. Indeed, the Glover Court recognized that the Code of Professional Responsibility is not applicable to paralegals, but apparently concluded that some unspecified conduct by the paralegal after she arrived at the second firm constituted a violation of the hiring firm’s obligation “to insure that their employees conduct themselves in accordance with the code” (Glover Bottled Gas Corp. v Circle M. Beverage Barn, 129 AD2d 678, 679 [1987]).
In addition to the Glover Court’s failure to specify what conduct by a paralegal justifies disqualifying the new employer, its cursory analysis is now 16 years old and needs to be reconsidered in light of the significant changes to the rule for lawyers since Cardinale v Golinello (43 NY2d 288 [1977]) was decided. While the Court of Appeals has not specifically overruled Cardinale’s harsh and mechanical approach for lawyers who move to a new firm, it has set forth a method and standard for resolving those motions which involves inquiry into the fact of conflict and established that more than the mere possibility of conflict is required for disqualification of attorneys (Solow v Grace & Co., 83 NY2d 303 [1994]; Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123 [1996]; Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631 [1998]; Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611 [1999]).
In the absence of a definite standard for paralegals and secretaries, it is logical to consider the rule applicable to lawyers. The transition from Cardinale to Kassis marks the *820 Court of Appeals’ growing recognition that Cardinale’s mechanical application of the Code of Professional Responsibility to disqualify law firms, while simple, is also unworkable. Disqualifying whole firms without regard for whether any members of the firm have confidential knowledge and what efforts were taken to avoid transmittal of confidences is unnecessarily preclusive, conflicts with the public policies favoring client choice and conflicts with attorneys’ ability to practice (Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611, 616-617 [1999]). The beneficial certainty and simplicity of the mechanical approach is outweighed by the significant hardship it imposes on the clients who lose their chosen counsel and then must seek new counsel to pick up where the disqualified counsel left off (Solow v Grace & Co., 83 NY2d 303, 309-310 [1994]).
Most importantly, the per se disqualification rule invites abuse. Many of these motions are used frivolously as an offensive litigation tactic. The motions are designed to inflict hardship on the current client and delay upon the courts by forcing disqualification even though the client’s attorney is ignorant of any confidences of the movant and the movant has no real concern that a confidence has been abused (Solow v Grace & Co., 83 NY2d 303, 310 [1994]).
Although it is not as simple as the Cardinale approach, the approved method for resolving disqualification motions requires consideration of “the circumstances of the prior representation” (Solow v Grace & Co., 83 NY2d 303, 313 [1994]) and a balancing of the concern for avoiding conflict of interest and professional appearances with the competing concern that disqualification motions not be used as “tactical ‘derailment’ weapons for strategic advantage in litigation” (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 638 [1998]). Thus, there is no per se rule that a law firm be disqualified because it hired an attorney who once worked at another office and could possibly have been exposed to confidential information. The movant must offer more to justify disqualification than mere “generalized assertions of ‘access to confidences and secrets’.” (Id.) That standard discourages use of such motions merely for strategic purposes and assists courts by making it clearer whether a former attorney’s alleged information was in fact a “confidence” or “secret” as defined by the code or whether it was generally known and therefore outside the scope of Code of Professional Responsibility DR 5-108 (a) (2) (22 NYCRR 1200.27 [a] [2]). While a movant need not actually spell out the claimed secrets *821 and confidences in order to prevail, it must at a minimum provide the motion court with information sufficient to determine whether there exists a reasonable probability that DR 5-108 (a) (2) would be violated (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 638 [1998]).
Even where the movant meets its burden for disqualifying an individual attorney, the entire law firm is not thereby automatically disqualified. The firm then has the burden of rebutting the presumption that it should be disqualified based on the individual attorney’s disqualification (Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611, 617 [1999]). To avoid disqualification, the firm must provide prima facie evidence either that there is no possibility that any of the attorneys presently in the firm acquired confidential information concerning the former client (Solow v Grace & Co., 83 NY2d 303, 313 [1994]) or prove that any information acquired by the disqualified lawyer is unlikely to be significant or material in the present litigation (Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611, 617 [1999]). Unless the firm meets that test, it is disqualified regardless of its efforts to erect a “Chinese Wall” between the disqualified attorney and others in the firm (Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611, 619 [1999]).
While ATNA has presented no evidence that DeCapita was acting as a decision maker, advisor or even researcher when she assisted ATNA’s counsel, DeCapita clearly was in a position to acquire ATNA’s confidences while she typed letters and reports prepared for the case. Thus, P&S would be disqualified if the rule applicable to “secretaries” and “paralegals” is the same as the rule applicable to “lawyers.” The fact that De-Capita has no present recollection of any of the confidences that she may have typed or seen would not be relevant if she were a lawyer.
In determining whether the New York rule for paralegals and secretaries should be different from the rule for lawyers, the court looks to the numerous federal and state courts which have analyzed the issue. Those courts have arrived at two different results. One group concludes that where a firm would be disqualified because of a lawyer’s gaining confidential information at another firm, disqualification is also required for nonlawyer employees with similar access to the case (Williams v Trans World Airlines, Inc., 588 F Supp 1037 [WD Mo 1984]; Zimmerman v Mahaska Bottling Co., 270 Kan 810, 19 P3d 784 [2001]). Those courts find that maintaining the appearance of propriety is paramount and ignore the practical effect that the rule has on nonlawyer employees.
*822 The other group recognizes that disqualification is not required by the rules applicable to nonlawyer employees. While those courts acknowledge the arguments for disqualification as a means of keeping up appearances, they recognize that it has a real cost and that less draconian measures are equally effective in protecting against actual ethical violations. Those courts conclude that the benefits of disqualification are outweighed by other stronger policy considerations. They have established an alternative approach by which the hiring firm can avoid disqualification by taking steps to ensure that nonlawyer employees with confidential information are kept from divulging or using confidences obtained at the prior firm (Stewart v Bee-Dee Neon & Signs, Inc., 751 So 2d 196 [Fla Dist Ct App 2000]; Green v Toledo Hosp., 94 Ohio St 3d 480, 764 NE2d 979 [2001]; Kapco Mfg. Co., Inc. v C & O Enters., Inc., 637 F Supp 1231 [ND 111 1985]).
The very real injury inflicted on the vulnerable nonlawyer employees by preemptive disqualification is easily illustrated by DeCapita’s case. Like most secretaries and paralegals, De-Capita worked on “scores” of files while employed at TH. Fully five of the still pending cases DeCapita worked on are ones in which P&S represented another party. While TH does not raise the issue in this motion, even its former clients who have no pending cases, but could become clients again, are a source of future conflict for P&S or any other firm that would hire DeCapita. Multiplying all of the conflicts by all of the cases that DeCapita was working on and had worked on during the dozen years she was employed by TH, the court finds that the greater part of the regional legal community would have conflicts.
The court also finds that DeCapita’s plight is not unusual. If the rules that are presently applicable to lawyers were to be applied to nonlawyers, very few firms could hire DeCapita, or any other secretary or paralegal from a medium size or large firm engaged in litigation, without being disqualified from at least a handful of cases as a result. While the same can also be said of lawyers, application of the rule to lawyers does not work the hardship it does to nonlawyers, who, unlike lawyers, are not as valuable to new employers because they are not in a position to carry their clients and the files they are working on with them to their new firm.
After weighing the two different approaches for dealing with nonlawyers who have had access to confidential information, *823 the court concludes that the second approach is the more reasonable and should be adopted in New York. Neither the existing ethical rules nor case law require automatic disqualification of law firms simply because they hire nonlawyers who have had access to confidences of their opponents. The court is aware of no actual problems arising from secretaries and paralegals moving freely from office to office, nor has the movant pointed to any actual problems. Even those states which require disqualification have not pointed to actual problems that were being addressed by disqualification. Aside from keeping up appearances there is no justification for such preemptive disqualification with its very real injury to vulnerable nonlawyer employees. Avoiding an abstract threat does not justify effectively barring nonlawyers from moving between law firms. Until such time as an actual problem is detected, requiring law firms to maintain “Chinese Walls” and the threat of sanctions for unethical behavior are sufficient deterrents to misconduct.
Accordingly, the court declines ATNA’s invitation to apply the ethical rules governing lawyers to nonlawyer employees of law firms. It is now necessary to assess whether P&S’s efforts to construct a “Chinese Wall” between DeCapita and the cases she worked on while at TH are sufficient to protect P&S from disqualification. Prior to hiring DeCapita, P&S and DeCapita ascertained which of P&S’s cases DeCapita had worked on, established that DeCapita was to have no contact with those working on those cases at P&S, and obtained DeCapita’s agreement to that arrangement. The court concludes that P&S did a satisfactory job of ensuring that DeCapita was and continues to be effectively isolated from ATNA’s case. Furthermore, the court approves of DeCapita’s obtaining separate counsel to represent her interests in opposing the motion as an appropriate precaution for avoiding contaminating P&S with any confidential information that DeCapita might have.
Finally, while the court does not agree with some of the courts in other jurisdictions that appear to give former employers something approaching veto power over whether their employee can be rehired, the court finds that the former employer should be promptly put on notice of such reemployment after it occurs. P&S’s failure to advise ATNA’s counsel that it had hired DeCapita ensured that these issues would fester. It is fortunate that TH became aware soon afterward and promptly *824 raised the matter rather than sitting on the information and raising its objections on the eve of trial.
Accordingly, ATNA’s motion to disqualify P&S is denied without costs.