2002 OK 30

**Mark A. HAYES, M.D.,**
**Plaintiff–Appellee,**

v.

**CENTRAL STATES ORTHOPEDIC**
**SPECIALISTS, INC., Defendant–**
**Appellant.**

No. 96,663.

Supreme Court of Oklahoma.

April 23, 2002.

Rehearing Denied July 3, 2002.

John E. Dowdell, Christine D. Little, Norman Wohlgemuth Chandler & Dowdell, Tulsa, OK, for Plaintiff–Appellee.

Graydon Dean Luthey, Jr., Michael T. Keester, R. Mark Petrich, Keri G. Williams, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for Defendants–Appellants.

Harvey D. Ellis, Jr., Crowe & Dunlevy, Oklahoma City, OK, for Amici Curiae, National Association of Legal Assistants, Oklahoma Paralegal Association, Central Oklahoma Association of Legal Assistants, and Tulsa Association of Legal Assistants.

## OPINION

WATT, Vice Chief Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶ 1 From August 1999 until June 2000 April Mendoza worked in Tulsa as a secretary for the firm of Norman Wohlgemuth Chandler & Dowdell, as secretary for John Dowdell and Christine Little. Mr. Dowdell and Ms. Little are the lawyers primarily responsible for the litigation between Mark Hayes, M.D. and Central States Orthopedic Specialists, Inc., which underlies this dispute. In May 2000 Ms. Mendoza gave notice to Norman Wohlgemuth that, effective two weeks hence on June 9, 2000, she was resigning. She stated before she left Norman Wohlgemuth that she was taking a job as secretary for Mr. Frank Hagedorn, a partner in the Tulsa firm of Hall, Estill, Hardwick, Gable, Golden & Nelson.

¶ 2 There is significant disagreement between plaintiff and Ms. Mendoza as to the nature and extent of Ms. Mendoza's involvement in the Hayes litigation. Dr. Hayes

claims that Ms. Mendoza worked on documents containing attorneys' work product and was "intimately familiar" with documents relating to settlement negotiations between the parties. But Ms. Mendoza stated in an affidavit that her duties were purely administrative and she had no recollection of any confidential information relating to the Hayes case.[1]

¶ 3 Despite the significant disagreement between the parties as to the nature and extent of Ms. Mendoza's involvement in the Hayes case, most of the relevant facts are undisputed. It is undisputed that (1) no one at Norman Wohlgemuth ever cautioned Ms. Mendoza not to tell anyone at Hall Estill anything she may have learned while working on Dr. Hayes' case against Central States Orthopedic; (2) neither Mr. Hagedorn, nor any other lawyer at Hall Estill for whom Ms. Mendoza has worked, has had any involvement in the Hayes case; (3) in early June 2000 Dr. Hayes and Mr. Dowdell discussed Ms. Mendoza's move from Norman Wohlgemuth to Hall Estill but decided not to raise the issue with Hall Estill at that time; (4) after Ms. Mendoza left Norman Wohlgemuth for Hall Estill, effective June 9, 2000, there were intense settlement negotiations between the parties; further, Dr. Hayes filed both an amended petition and a second amended petition and Central States Orthopedic filed an answer, a counterclaim for $100,000.00 and extensive discovery requests; (5) on February 9, 2001, eight months after Ms. Mendoza's resignation, Dr. Hayes' lawyers sent a letter to Hall Estill requesting that the firm withdraw from the case but Hall Estill declined to do so and, on March 9, 2001, Dr. Hayes filed a motion asking the trial court to require Hall Estill to withdraw.

¶ 4 On June 11, 2001, the trial court filed a written order, findings of fact, and conclusions of law granting Dr. Hayes' motion and disqualifying Hall Estill from any further representation of Central States Orthopedic in the litigation. Central States Orthopedic then appealed to this Court. On August 8, 2001, Central States Orthopedic moved that this Court retain jurisdiction of this matter and on September 14, 2001 filed a motion to stay the case from proceeding in the trial court and stay enforcement of the order of disqualification pending appeal because the trial court had refused to do so. Central States Orthopedic argued that if it were required to retain new counsel and go forward in the trial court during the pendency of this appeal, its appeal claiming that it should not be required to do so would be rendered moot. Dr. Hayes resisted both motions. On October 16, 2001 we granted Central States Orthopedic's motion for stay but accelerated the briefing schedule and on October 19, 2001 we granted defendant's motion to retain jurisdiction of the appeal.

¶ 5 *Amici curiae*, National Association of Legal Assistants, Oklahoma Paralegal Association, Central Oklahoma Association of Legal Assistants, and Tulsa Association of Legal Assistants, have filed their brief on the strength of the written consent of all the parties in the case. Although we have not heretofore formally granted leave to file an *amici* brief, we treat the written consent of the parties as a motion that we do so. Thus, we will consider the brief of the *amici curiae*.

## ISSUES

### I.

¶ 6 Did the trial court err when it declined to find that plaintiff had waived his claim that defendant's firm should be disqualified?

### II.

¶ 7 Did the trial court err when it found that Oklahoma law requires a firm to be disqualified when it hires a non-lawyer employee who had acquired confidential information while working on litigation for the firm's opponent's firm, although the firm has set up a "Chinese Wall" screening device to insure that the non-lawyer employee does not reveal confidences and will be screened from exposure to the litigation?

We answer, "yes" to each question.

## DISCUSSION

¶ 8 It is our view that the trial court erred in holding that Dr. Hayes had not waived his

---

1. The time records and memoranda with which Ms. Mendoza was overtly involved, which are part of the *in camera* submission filed by Dr. Hayes, tend to support Ms. Mendoza's statement in her affidavit that her duties were administrative.

right to seek the disqualification of Hall Estill by waiting eight months to raise the issue. We have also concluded that the trial court erred in holding that Oklahoma recognizes a *per se* rule that prohibits firms who have hired a non-lawyer employee from a firm with which they are engaged in litigation from avoiding automatic disqualification. We hold that if the hiring firm claims that it has set up a "Chinese Wall" screening device to insure that the non-lawyer employee has not and will not reveal confidences, the court must consider it. This being so, we need not decide whether the quantity and quality of Dr. Hayes's proof was sufficient to establish that Ms. Mendoza actually acquired confidential information from Norman Wohlgemuth when Ms. Mendoza left its employ to take a job with Hall Estill. Instead, we assume for the purposes of this opinion that the record does support such a conclusion.[2]

## I.

*The trial court erred in failing to hold that Dr. Hayes had waived any right he might have had to seek Hall Estill's disqualification under the circumstances presented in this appeal.*

■■■ ¶ 9 We begin our discussion of this issue by observing,

*Legal practitioners are not interchangeable commodities.* Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.

2. The trial court did not find that Ms. Mendoza had actual knowledge of privileged information when she left Norman Wohlgemuth. Instead, the trial court found that Ms. Mendoza was "privy" to such information. We have held that before an attorney may be disqualified, the order "must include a specific factual finding that [the lawyer] had knowledge of material and confidential information." *Piette v. Bradley & Leseberg,* 1996 OK 124 ¶ 2, 930 P.2d 183, 184. Nevertheless, for the purposes of this opinion we assume without deciding that Ms. Mendoza had actual knowledge of privileged information as a result of her employment by Norman Wohlgemuth.

[Emphasis as in the original.] *In re Towne,* 2000 OK 30 ¶ 14, 3 P.3d 154, 160. While a party's right to choose his own counsel "may be set aside under limited circumstances," a showing must first be made that declining to do so "would threaten the integrity of the judicial process." *In re Towne,* 2000 OK 30 at ¶ 15, 3 P.3d at 161. Thus, the barrier a party must surmount to secure the disqualification of his opponent's counsel is high.

¶ 10 A recurring theme in the cases that have recognized waiver as a basis for denying motions to disqualify is the need to insure that such motions are not used for strategic purposes.[3] The statement of the Scope of the Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, also expresses this concern, "Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." The reason for this concern is plain: disqualification is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result from failing to invoke it.

■■ ¶ 11 The undisputed facts here reveal that Dr. Hayes and Mr. Dowdell discussed what to do about the fact Ms. Mendoza was going to work for the firm that was representing Central States Orthopedic but decided to take no action whatever for eight months. Although Dr. Hayes and Mr. Dowdell attempted to explain their inaction on the basis that they were involved in settlement negotiations, it seems to us that this stage of the litigation would have been the very point at which they should have been most worried about Ms. Mendoza's knowledge. Indeed, in his motion to disqualify

3. *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir.1985), *superseded on other grounds by SLC Limited V v. Bradford Group West, Inc.,* 999 F.2d 464 (10th Cir.1993) ("Disqualification motions must be diligently pursued to avoid waiver and may not be used as strategic litigation tactics"). See also, *Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725, 729 (11th Cir.1988) ([A] failure to make a timely objection may also result in a waiver.) and *Williams v. Bell,* 793 So.2d 609, 613, (Miss.2001) ("The client cannot hold the right in reserve for tactical purposes until it would be most helpful to his position. Failure to move for disqualification at the earliest practical opportunity will constitute a waiver.")

Hall Estill, Dr. Hayes alleged that Ms. Mendoza "was intimately familiar with a host of confidential documents relating to the settlement discussions and Dr. Hayes' claims"[4] These facts support the inference that Dr. Hayes and Mr. Dowdell either knew Ms. Mendoza possessed no confidential information critical to their case or, if she did, were confident that she would disclose nothing of what she knew.

¶ 12 Dr. Hayes relies on several cases in which, despite delays in seeking disqualification longer than eight months, the courts held that there was no waiver. *Emle Industries, Inc. v. Patentex*, 478 F.2d 562 (2d Cir.1973); *Atasi Corp. v. Seagate Technologies*, 847 F.2d 826 (Fed.Cir.1988); *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F.Supp. 1226 (S.D.N.Y.1995); and *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir.1984). But these cases are factually inapposite.

¶ 13 *Emle Industries, Inc. v. Patentex*, 478 F.2d 562 (2d Cir.1973) did not involve a waiver issue. Instead, the court held that disqualification was appropriate because there was no prejudice, as successor counsel had been working on the case for five years. In *Atasi Corp. v. Seagate Technologies*, 847 F.2d 826 (Fed.Cir.1988) movant sought disqualification at the first opportunity. The case had been stayed and movant sought a disqualification order on the same day as its opponent filed a motion to lift the stay. There is no indication in the *Atasi* opinion that there was any activity in the case, settlement or otherwise, while it was stayed. In *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F.Supp. 1226 (S.D.N.Y.1995) the lawyer whose disqualification was sought had originally indicated that he would not be involved in the litigation but later attended a conference before the court. Movant sought the lawyer's disqualification the day after the conference. Finally, in *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir.1984), the court noted, correctly, that delay alone would not necessarily prejudice the non-moving party. Here, however, Dr. Hayes and Mr. Dowdell remained silent about the disqualification is-

sue during a period of intense settlement negotiations followed by an exchange of pleadings, all of which required Hall Estill's continuing deep involvement in the case and for which Central States Orthopedic had to pay.

¶ 14 We hold that Central States Orthopedic established that Dr. Hayes, through his delay of eight months while much was happening in the case, waived any right he might have had to insist on the harsh remedy of disqualifying Hall Estill from further representing Central States Orthopedic. Our holding that Dr. Hayes waived any right he might have had to disqualify Hall Estill, however, does not stand for the proposition that Dr. Hayes and Mr. Dowdell acted in bad faith when they decided to delay raising the disqualification issue. Instead, it is based on our unwillingness to apply the harsh remedy of disqualification in circumstances that are as ambiguous as those presented here. We hold that there was a waiver because we conclude that the hardship on Central States Orthopedic as a result of requiring its counsel, Hall Estill, to withdraw, would likely be significantly greater than any hardship Dr. Hayes will likely suffer by Hall Estill being allowed to continue to represent Central States Orthopedic. In short, we are satisfied that our decision declining to disqualify Hall Estill does not "threaten the integrity of the judicial process." *In re Towne*, 2000 OK 30 at ¶ 15, 3 P.3d at 161.

## II.

*Under the facts of this case, where the new firm has set up a "Chinese Wall" screening device to insure that the non-lawyer employee does not reveal confidences and will be screened from exposure to the litigation, the trial court erred when it found that Oklahoma law requires a firm to be disqualified when it hires a non-lawyer employee who had acquired confidential information while working on litigation for the firm's opponent's firm.*

■ ¶ 15 As a result of our holding that Dr. Hayes waived any right he might have

---

4. Dr. Hayes claims that *Buckley v. Airshield Corp.*, 908 F.Supp. 299 (D.Md.1995) supports his contention that somehow his ongoing settlement negotiations with Central States Orthopedic relieved him of the duty to immediately raise the

disqualification issue. But it does not. In *Buckley*, the plaintiff raised the disqualification issue within one month after his former lawyer entered an appearance in the case.

had to seek the disqualification of Hall Estill, it is not strictly necessary for us to address the screening issue. We shall do so, however, because it presents an important question of first impression, which we believe should be resolved now. The importance of the issue is demonstrated by the *amici curiae* brief filed on behalf of several groups who represent non-lawyers who work as legal assistants in law firms. The *amici* claim that the failure to address this issue imposes potential impairment to non-lawyer employees of law firms who wish to change employment. Because we recognize the potential danger that our failure to resolve this issue presents, we will address it.

¶ 16 The trial court entered comprehensive findings of fact and conclusions of law as part of its order disqualifying Hall Estill. The trial court's order relied on *Zimmerman v. Mahaska Bottling Company*, 270 Kan. 810, 19 P.3d 784 (2000), which held, "Screening devices are prohibited under the [Rules of Professional Conduct]." Thus, despite the undisputed evidence that Ms. Mendoza had not revealed any confidences and was screened from doing so by Hall Estill, the trial court, based on *Zimmerman*, nevertheless disqualified Hall Estill without any inquiry into the effectiveness of its screening. We hold that this was error.

¶ 17 Most authorities recognize that the considerations going into whether screening is proper for lawyers are entirely different than those involving non-lawyer employees. We have not addressed whether screening would be permitted either for lawyers or non-lawyers. Whether screening will be permitted for lawyers is controversial, with many courts holding that screening will not be permitted to prevent disqualification of a lawyer's new firm. But most of the cases that have examined whether a *non-lawyer's* new firm should be disqualified have approved the use of screening devices, so called "Chinese Walls," to avoid disqualification.

¶ 18 Similarly, Rules 1.11 [5] and 1.12 [6] of the Rules of Professional Conduct expressly provide for the use of screening devices to prevent the disqualification of firms who hire former government lawyers, judges, arbitrators, or law clerks. In *Smart Industries Corp., Mfg. v. Superior Court County of Yuma*, 179 Ariz. 141, 876 P.2d 1176 (Ariz. App.1994), the court noted that there are valid reasons for treating non-lawyer employees like government lawyers are treated under Rule 1.11:

> *We believe that this reason for treating government lawyers differently in the context of imputed disqualification cases applies equally to nonlawyer assistants, who, unlike lawyers in private practice, generally have neither a financial interest in the outcome of a particular litigation, nor the choice of which clients they serve. Moreover, in our opinion, the public perception of what is expected of lawyers as compared to nonlawyers is different, probably based*

---

5. Rule 1.11 of the Oklahoma Rules of Professional Conduct provides in material part as follows:
(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) *the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom;* and
(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
[Emphasis added.]

6. Rule 1.12 of the Oklahoma Rules of Professional Conduct provides in material part as follows:

a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, unless all parties to the proceeding consent after consultation.
. . .
(c) *If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:*
(1) *the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom;* and
(2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.
[Emphasis added.]

on the "independent contractor" status enjoyed by lawyers as compared to the "master/servant" role of nonlawyer assistants. . . .

[Emphasis added.] *Smart Industries,* 876 P.2d at 1184.

¶ 19 We find the *Smart Industries* court's reasoning persuasive. Nevertheless, the Kansas Supreme Court in *Zimmerman* rejected the *Smart Industries* analysis with a quote from *Ciaffone v. District Court,* 113 Nev. 1165, 945 P.2d 950 (1997):

> The reasoning of *Smart Industries* implicitly recognizes that a nonlawyer's employment opportunities or mobility must be weighed against client confidentiality before disqualification occurs. While this approach may appear fairer to the paralegal/secretary, it has been *roundly criticized* for ignoring the realities of effective screening and litigating that issue should it ever arise. For example, one commentator explained that *a majority of courts have rejected screening* because of the uncertainty regarding the effectiveness of the screen, the monetary incentive involved in breaching the screen, the fear of disclosing privileged information in the course of proving an effective screen, and the possibility of accidental disclosures. [Citation omitted.][7] Accordingly, we conclude that adherence to the existing SCR scheme [disallowing screening for lawyers moving from private firm to private firm] is the better rule. We, therefore, refrain from creating an exception to the imputed disqualification rule embodied in SCR 160.

[Emphasis and bracketed comments as in the original.]

¶ 20 Contrary to the conclusion of the *Zimmerman* and *Ciaffone* courts, we have found no opinion from any jurisdiction criticizing *Smart Industries* other than *Zimmerman* and *Ciaffone.* Further, the *Zimmerman* court stated, "Screening devices, however, are prohibited under the KRPC.[8]

There is no provision or exception which allows them for lawyers." But Rules 1.11 and 1.12, which allow screening where former government lawyers and judges are involved, are part of the Kansas Rules of Professional Conduct. This apparent discrepancy was not explained in the *Zimmerman* opinion.

¶ 21 In *Ciaffone,* 945 P.2d at 953 the court relied on an article by M. Peter Moser, *Chinese Walls: a Means of Avoiding Law Firm Disqualification When a Personally disqualified Lawyer Joins the Firm,* 3 Geo. J. Legal Ethics 399, 403, 407 (1990), to support its conclusion that screening for non-lawyer employees had been "roundly criticized." This conclusion is not supported by the Moser article. While Moser noted that many courts have rejected the use of Chinese Walls *for lawyers,* he also observed, "Moreover, *law firms are generally permitted to use Chinese Walls where nonlawyer personnel with material confidential client information change from one firm to another firm that represents an opponent.*" [Emphasis added.] 3 Geo. J. Legal Ethics at 406. The thesis of the Moser article was that *per se* disqualification of *lawyers* is a bad idea and that "the use of a more rational approach to resolving imputed disqualification issues" is a good one. 3 Geo. J. Legal Ethics at 399. Moser suggested, "Greater use of screening mechanisms, so called 'Chinese Walls,' should be permitted to protect the former client's confidences from disclosure . . ." 3 Geo. J. Legal Ethics at 400. Thus, far from showing that the use of screening devices has been "roundly criticized," the Moser article stands for the proposition that screening devices for non-lawyers are "generally permitted" and such devices should be more widely used than they are now where lawyers are concerned.

¶ 22 In *Kapco Manufacturing Company, Inc. v. C & O Enterprises, Inc.,* 637 F.Supp. 1231 (N.D.Ill.1985), the court refused to disqualify a firm that had hired a secretary who

---

**7.** The citation the *Zimmerman* court omitted but which the *Ciaffone* court relied on was to an article by M. Peter Moser, *Chinese Walls: a Means of Avoiding Law Firm Disqualification When a Personally disqualified Lawyer Joins the Firm,* 3 Geo. J. Legal Ethics 399.

**8.** "KRPC" is an acronym for Kansas Rules of Professional Conduct.

formerly worked for a firm that was its opponent in litigation. The court held that, although the secretary had acquired client confidences at the first firm, her undisputed testimony that she had not revealed those client confidences to anyone at the new firm was sufficient to prevent the new firm's disqualification. In so holding the court observed that courts must "guard against lightly disqualifying the attorney of a party's choice partly because of the prejudice inevitably resulting from such disqualification." *Kapco,* 637 F.Supp. at 1241.

¶ 23 In 1988, the American Bar Association's Committee on Professional Ethics expressly adopted the *Kapco* analysis and opined in an Informal Opinion that a firm hiring a non-lawyer employee from its opponent's firm would not be required to withdraw from the litigation, although the nonlawyer employee possessed confidential information, if the employee was screened in a way to prevent the disclosure of confidences. ABA/BNA lawyers' Manual on Professional Conduct 901:318 (Aug. 31, 1988), ABA Informal Opinion 88–1526 (June 22, 1988).

¶ 24 In *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 835 (Tex.1994) the court cited *Smart Industries* with approval and agreed with the ABA Ethics Committee's Informal Opinion (and by inference with *Kapco* ):

> We share the concerns expressed by the ABA [that too rigid a rule with regard to disqualification would unreasonably hinder the mobility of non-lawyer employees], and *agree that client confidences may be adequately safeguarded if a firm hiring a paralegal from another firm takes appropriate steps in compliance with the Disciplinary Rules.* See ABA Op. 1526 at 3. Specifically, the newly-hired paralegal should be cautioned not to disclose any information relating to the representation of a client of the former employer. The paralegal should also be instructed not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation. Additionally, the firm should take other reasonable steps to ensure that the paralegal does not work in connection with matters on which the paralegal worked during the prior employment, absent client consent after consultation.

[Bracketed comment and emphasis added.]

¶ 25 For the reasons discussed above, we adopt the analysis of *Smart Industries* and *Kapco* and hold that, under the facts presented, screening devices have been used to prevent disqualification where non-lawyer employees are involved. We hold that a *per se* rule that would prohibit a court's examination of the effectiveness of a screening device for a non-lawyer is not appropriate under Oklahoma law. Thus before being disqualified for having hired a non-lawyer employee from its opponent, the hiring firm should be given the opportunity to prove that the non-lawyer has not revealed client confidences to the new employer and has been effectively counseled and screened from doing so. If such proof is made to the court's satisfaction, the court should deny the motion to disqualify· the non-lawyer's new firm. We expressly decline to consider in this opinion whether the use of screening devices would be appropriate in cases involving *lawyers* who move to a firm that represents an opponent who the lawyers had represented.

## CONCLUSION

¶ 26 We hold that Central States Orthopedic established that Dr. Hayes, through his delay of eight months while much was happening in the case, waived any right he might have had to insist on the harsh remedy of disqualifying Hall Estill from further representing Central States Orthopedic. We hold that there was a waiver because we conclude that the hardship on Central States Orthopedic as a result of requiring its counsel, Hall Estill, to withdraw, would likely be significantly greater than any hardship Dr. Hayes would likely suffer by Hall Estill being allowed to continue to represent Central States Orthopedic. Our decision in this regard does not "threaten the integrity of the judicial process." *In re Towne,* 2000 OK 30 at ¶ 15, 3 P.3d at 161.

¶27 We hold that the use of screening devices may be appropriate where non-lawyer employees are involved. We hold that a *per se* rule that would prohibit a court's examination of the effectiveness of a screening device for a non-lawyer is not appropriate under Oklahoma law. Thus before being disqualified for having hired a non-lawyer employee from its opponent, the hiring firm should be given the opportunity to prove that the non-lawyer has not revealed client confidences to the new employer and has been effectively counseled and screened from doing so. If such proof is made to the court's satisfaction, the court should deny the motion to disqualify the non-lawyer's new firm. We expressly decline to decide in this opinion whether the use of screening devices would be appropriate in cases involving *lawyers* who move to a firm that represents an opponent of the lawyers' former firm.

¶28 The trial court erred in failing to hold that Dr. Hayes had waived any right he might have had to insist on the disqualification of Hall Estill and also erred in holding, as a matter of law, that it could not consider Hall Estill's evidence that Ms. Mendoza had not disclosed and would not disclose confidential information.

ORDER OF THE TRIAL COURT REVERSED AND MATTER REMANDED WITH INSTRUCTIONS TO DENY PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT'S COUNSEL.

WATT, V.C.J., HODGES, KAUGER, SUMMERS, and WINCHESTER, JJ., concur.

HARGRAVE, C.J., concurs in part, dissents in part.

LAVENDER and BOUDREAU, JJ., concur in Part II, dissent to Part I.

OPALA, J., dissents.