2005 OK CIV APP 11

**Peggy K. PAPPAS, Plaintiff/Appellant,**

v.

**WAGGONER'S HEATING & AIR, INC. and John Brumfield, Defendants/Appellees,**

**Pamela B. Long and Catherine M. Webb, Defendants.**

**No. 98,701.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 19, 2004.

Certiorari Denied Feb. 7, 2005.

Ed Abel, Lynn B. Mares, Kelly Bishop, Abel, Musser, Sokolosky, Mares & Kouri, Oklahoma City, OK, for Plaintiff/Appellant.

Jake Jones, Linda Driskill, Oklahoma City, OK, for Defendants/Appellees Waggoner's Heating & Air, Inc., and John Brumfield.

Opinion by LARRY JOPLIN, Judge.

¶1 Plaintiff/Appellant Peggy K. Pappas ("Plaintiff") seeks review of the trial court's order granting Defendants/Appellees Waggoner's Hearing & Air, Inc. and John Brumfield's ("Defendants") Motion to Disqualify her attorneys, Ed Abel and Kelly Bishop, and members of their law firm, Abel, Musser, Sokolosky, Mares & Kouri, from representing her in an action filed following a multi-vehicle automobile collision, where Barry Davis, a member of the firm, served as a mediator in the case prior to Plaintiff's employment of Abel & Musser to represent her. Having reviewed the record, we hold the order of the trial court should be, and hereby is, reversed.

¶2 In this appeal, Plaintiff concedes that Davis cannot represent her, but alleges the trial court erred in imputing Davis' disqualification on a firm-wide basis. Plaintiff submitted Affidavits demonstrating the law firm screened Davis from participation in the case and fee. Plaintiff contends this screening

process allowed the Abel & Musser firm to avoid imputed disqualification. Defendants contend as Davis is prohibited from representing Plaintiff, so, too, are all members of the firm, without exception.

## I. Statement of the Case and Facts

¶ 3 On January 25, 2001, the trial court ordered this case to mediation pursuant to the District Court Mediation Act. On April 25, 2001, attorney Barry Davis, a member of Abel & Musser, sent a letter on the letterhead of "Oklahoma Mediation/Arbitration Service" to counsel setting mediation for June 4, 2001. The mediation was held as scheduled, but no settlement was reached. At that time, Plaintiff was represented by counsel from a firm other than Abel & Musser. After the unsuccessful mediation, Plaintiff's prior counsel withdrew from representing her.

¶ 4 On May 14, 2002, attorneys Abel and Bishop, of the law firm Abel & Musser, entered an appearance on behalf of Plaintiff. On July 1, 2002, Defendants filed a Motion to Disqualify Plaintiff's counsel and their firm because Davis, as a former mediator in the case, was prohibited from representing Plaintiff.

¶ 5 On July 17, 2002, Plaintiff filed a Response that the firm should be allowed to proceed with representation as Davis functioned independently from the firm during mediation and was not participating in the litigation. Plaintiff attached Affidavits of attorneys Abel, Bishop and attorney-mediator Davis. Attorneys Abel and Bishop attested that they did not know, at the time they were contacted by Plaintiff, that a member of their firm was a former mediator in the case. The Affidavits set forth screening procedures implemented by the firm to ensure that: (1) Davis had not and would not represent Plaintiff in this litigation; (2)Davis had not and would not participate in the litigation of this case, nor in the fee; and (3) there had not been and would not be any sharing of information among Davis and other lawyers in the firm regarding matters related to this case.

¶ 6 On September 19, 2002, Defendants' Motion to Disqualify came on for hearing. Attorneys for the parties appeared as well as counsel representing Plaintiff's law firm. The trial court reviewed the pleadings and granted Defendants' Motion to Disqualify. Upon a Motion to Settle, the trial court entered a Journal Entry without findings of fact supporting disqualification.

## II. Jurisdiction and Standard of Review

¶ 7 An Order Granting a Motion to Disqualify is a Final Order subject to appellate review. 12 O.S. § 953; *Piette v. Bradley & Leseberg*, 1996 OK 124, 930 P.2d 183. This appeal requests review of contested issues of law. A *de novo* standard governs appellate review of issues of law. *Gladstone v. Bartlesville Independent School District No. 30*, 2003 OK 30, 66 P.3d 442.

## III. Contentions of the Parties

¶ 8 Defendants contend that Rule 1.10 (Imputed Disqualification: General Rule) of the Oklahoma Rules of Professional Conduct for attorneys governs this case. Rule 1.10 provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8, 1.9 or 2.2.

¶ 9 Defendants assert that if Davis was practicing alone, he would have a conflict of interest under Rule 1.7(Conflict of Interest: General Rule) and Rule 1.9 (Conflict of Interest: Former Client) that would prohibit him from representing Plaintiff. Under Rule 1.10, Defendants argue that this would result in imputed disqualification without exception. Defendants contend that even a "Chinese Wall"[1] cannot prevent imputing such disqualification to all lawyers in the firm.

---

1. "Chinese Wall" is a term used to describe institutional screening mechanisms, that are implemented when one member of a firm is disqualified because of former representation of a client that is now adverse to a client of the firm, that sufficiently shield the flow of confidential information between the individually disqualified attorney and other members of the firm. *See* Black's Law Dictionary.

¶ 10 Plaintiff contends Rule 1.12 (*Former Judge or Arbitrator*) governs this case. Rule 1.12 disqualifies a lawyer from representing "anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer ..." Rule 1.12 imputes the former adjudicator's individual disqualification to all lawyers in the firm. However, under Rule 1.12, there is an exception to imputed disqualification:

> If a lawyer is disqualified by [being a judge or an arbitrator in connection with the matter], no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless: (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom ...

¶ 11 Plaintiff asserts the Affidavits set forth sufficient facts to meet the requirements of the "screening exception" to Rule 1.12. Particularly, Plaintiff contends the un-contradicted evidence is that (1) Davis is screened from participating in this matter and (2) Davis is not to be apportioned any part of the fee. With un-rebutted evidence of such screening devises in place, Plaintiff asserts that imputing disqualification on a firm-wide basis is unwarranted.

### IV. Dilemma of Imputed Disqualification

¶ 12 The fact of Davis' disqualification is not in dispute. The basis on which Davis is disqualified is, however, in controversy. If disqualification is based on Rule 1.10, the law firm cannot "cure" the imputed disqualification. If disqualification is based on Rule 1.12, and sufficient screening devises are implemented, other lawyers in Davis' firm may proceed with representation of Plaintiff.

¶ 13 This is an issue of first impression in Oklahoma. When an *attorney-mediator* is disqualified, does that prohibition on representation impute, without exception, to all lawyers associated in a firm with the mediator? We must first determine which, if any, of Oklahoma's Rules of Professional Conduct apply.

### V. The Scope of Rules of Professional Conduct for Attorneys

¶ 14 This case involves a mediator and former parties to a mediation. This is not a case involving former clients of a lawyer. Oklahoma's Rules of Professional Conduct ("ORPC") generally impose "duties flowing from the client-lawyer relationship." 5 O.S. Ch.1, App. 3–A, Scope. The ORPC recognize a distinction between the client-lawyer relationship and the party-mediator relationship. 5 O.S. Ch.1, App. 3–A, Rule 2.2 (Intermediary), Comments: Code Comparison.

¶ 15 Resources other than the ORPC may be consulted when the client-lawyer relationship is not involved. For example, judges have obligations that do not arise from the client-lawyer relationship to parties who appear before them. The Code of Judicial Conduct is to be consulted regarding such duties. 5 O.S. Ch. 1, App. 4.

¶ 16 Likewise, mediators have obligations that do not arise from the attorney-client relationship. The Code of Professional Conduct for Mediators ("Code") delineates duties of mediators. 12 O.S. Ch. 37, App. A. The Code makes it clear that parties appearing for mediation are not clients of the mediator. It states that parties to a mediation "are not being represented independently by the mediator" and that a mediator is not to "offer legal advice to parties." 12 O.S. Ch. 37, App. A, § (B)(1)(d)(1) and App. A, § (B)(2)(d)(1).

¶ 17 The Code precludes a mediator from subsequently representing a party but does not address the obligations of lawyers associated in a firm with a mediator. Conduct of such lawyers is governed by the ORPC. Plaintiff and Defendants disagree as to whether Rule 1.10 or Rule 1.12 applies to other lawyers in the firm with Davis.

### VI. Rule 1.10: General Rule of Imputed Disqualification

¶ 18 Rule 1.10, titled "Imputed Disqualification: General Rule," disqualifies all lawyers in a firm, without an express exception, if one of them practicing alone would be disqualified by an enumerated Rule from representing the firm's client:

While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8, 1.9 or 2.2.

¶ 19 Defendants assert Rules 1.7 and Rule 1.9 disqualify Davis, and thus all lawyers associated in a firm with him. Rule 1.7 (Conflict of Interest: General Rule) prohibits a lawyer from representing a client if that representation will be "materially limited by the lawyer's responsibilities to *another client* . . ." Rule 1.9 ("Conflict of Interest: *Former Client*") similarly arises from the client-lawyer relationship.[2]

¶ 20 There are no other or former *clients* of Davis involved in this case; only former parties to a mediation. We do not find that either Rule 1.7 or 1.9 provides a basis on which to disqualify Davis.[3] Under the facts of this case, Rule 1.10 is not invoked.

## VII. Rule 1.12: Rule of Disqualification for Former Judge or Arbitrator

■ ¶ 21 Rule 1.12 of the ORPC is titled "Former Judge or Arbitrator." The text of Rule 1.12 likewise does not include the term "mediator." The text does, however, employ broad language that encompasses those who participated personally and substantially in a matter over which they formerly served as a "judge *or other adjudicative officer.*" The question is: Do mediators fall within the scope of Rule 1.12 of the ORPC?

¶ 22 Mediators do not make binding decisions for parties. 12 O.S. Ch. 37, App. A, § (B)(5)(1)(d)(3). A mediator "enters a dispute with consent of parties, to aid and assist them in reaching a mutually satisfactory settlement to the issues in dispute." 12 O.S. Ch. 37, App. A, Preamble. The focus of Rule 1.12, however, is not on the decision making

authority of the lawyer in the underlying proceeding, but on the lawyer's conduct subsequent to the proceeding.

¶ 23 The Comment to Rule 1.12 of the ORPC quotes from EC 5–20 that includes mediators among those who are prohibited from subsequently representing a party who appeared before them. Consistent with the EC, is the American Bar Association's current Model Rule 1.12 that is titled: "Former Judge, Arbitrator, Mediator or Other Third-Party Neutral." Model Rules of Professional Conduct, Rule 1.12 (ABA 2004).

■ ¶ 24 The Oklahoma Rules of Professional Conduct are to be interpreted with sensitivity to the purpose and underlying principles of the Rule: "The Rules simply provide a framework for the ethical practice of law." 5 O.S., Ch. 1, App. 3–A, Scope. Interpreting the framework of Rule 1.12 of the ORPC to include mediators is in keeping with the purpose and underlying principles of Rule 1.12.

¶ 25 Finding Rule 1.12 to govern mediators also subjects lawyers in firms with mediators to its mandates. The mandates of Rule 1.12 impute disqualification but also allow for a screening exception. Allowing for a screening exception inherently relies, in part, upon the personal integrity of the disqualified lawyer.

## VIII. The Code of Professional Conduct for Mediators

¶ 26 Ethical obligations imposed by the Code of Professional Conduct of Mediators are many. 12 O.S., Ch. 37, App. A. The District Court Mediation Act, under which Davis was appointed as a mediator in this case, also mandates compliance with Standards of Conduct for Mediators. 12 O.S. § 1825. The high and stringent standards to

---

**2.** Neither Rule 1.8 nor Rule 2.2 applies: Rule 1.8 (Conflict of Interest: Prohibited Transactions) governs transactions involving client-lawyers; and Rule 2.2 (Intermediary) addresses a lawyer providing representation "between clients" with the Comment stating it does not apply when a lawyer mediates "between parties."

**3.** Davis' personal interest in upholding the Code does not invoke the principles or underlying purpose of imputed disqualification under Rule 1.10

as evidenced by the following: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." Model Rule 1.10 (ABA 2004).

which mediators are held lends credence to including mediators among those for whom a screening exception may be invoked.

¶ 27 A mediator's independent professional obligations work together with screening devises to ensure that no breach of confidentiality occurs. This combination results in little likelihood that real harm will result. The Oklahoma Supreme Court holds that "disqualification is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result from failing to invoke it." *Hayes v. Central States Orthopedic Specialists, Inc.,* 2002 OK 30, ¶ 10, 51 P.3d 562, 565. Even with finding mediators are among those who may be screened, compliance with the screening exception requirements of Rule 1.12 must be reviewed.

### IX. The Screening Exception to Imputed Disqualification Under Rule 1.12

██ ¶ 28 As we have determined that Rule 1.12 rather than Rule 1.10 governs, the question becomes: Because Rule 1.12 allows for screening, are the steps taken *here* sufficient to allow lawyers associated with Davis to continue with representation of Plaintiff?

██ ¶ 29 The Oklahoma Supreme Court has held that courts must consider claims that screening devises are sufficient to prevent imputed disqualification. *See Hayes v. Central States Orthopedic Specialists, Inc.,* 2002 OK 30, 51 P.3d 562.[4] However, no Oklahoma case sets forth what factors a court must consider when determining the sufficiency of screening. Courts in other jurisdictions have addressed the sufficiency of screening devises and uniformly look to essentially the same factors. *See Cromley v. Board of Education of Lockport Township High School Dist. 205,* 17 F.3d 1059 (7th Cir.1994); *Chapman v. Chrysler Corp.,* 54 F.Supp.2d 864 (S.D.Ind.1999); *Stencel v. Fairchild Corp.,* 174 F.Supp.2d 1080 (C.D.Cal.2001). Such factors include: (1) in-

structions given to ban the exchange of information between the disqualified attorney and other members of the firm; (2) restricted access to files and other information about the case; (3) prohibited sharing in fees derived from the litigation; (4) the size of the law firm and its structural divisions; and (5) the likelihood of contact between the quarantined lawyer and other members of the firm. *Cromley* 17 F.3d at 1066; *Chapman* 54 F.Supp.2d at 866. We believe such factors embrace the purposes and principles applicable to the screening process required in this case under Rule 1.12. We therefore utilize them in our *de novo* review.

██ ¶ 30 Here, the only evidence submitted regarding screening was in the form of Affidavits.[5] Attorney-mediator Davis attested:

Mediation was through Davis' contract with Oklahoma Mediation/ Arbitration Service ("OM/AS");

Davis' contract with OM/AS was unrelated to the Abel & Musser firm;

Davis maintained a separate filing system from Abel & Musser for his mediation cases;

Davis' mediation files were not available to other lawyers associated with him in the Abel & Musser law firm;

Davis has not and would not reveal confidential information;

Davis honored statutory and ethical rules regarding mediation information;

Davis kept no notes on the former unsuccessful mediation he conducted in this case;

Davis did not recall specific, confidential or privileged information obtained during the failed mediation of this case;

Davis does not and would not represent Plaintiff's interests in this case;

Davis had no monetary interest in the litigation of this case;

---

4. Held: Court must consider a claim that screening devises were sufficient to shield against flow of confidential information held by a non-lawyer.

5. "When all evidence is submitted in the form of affidavits, and when the district court does not

hold an evidentiary hearing or make findings of fact to which we must defer, 'district courts enjoy no particular advantage over appellate courts in their formulation of ethical norms.' " *Cromley* at 1064; *See also Chapman* at 867.

Davis had not been asked to reveal confidential information to lawyers associated with him in the firm of Abel & Musser;

The only staff Davis shared with Able & Musser was a receptionist.

Attorneys Abel and Bishop attested:

Former mediator, Barry Davis, did have an office at the Abel Law Firm;

Davis had no financial interest in the litigation of Plaintiff's case;

Neither Mr. Abel, Mr. Bishop, nor anyone in the law firm of Able & Musser had or would discuss the litigation of Plaintiff's case with Davis;

Neither Mr. Abel nor Mr. Bishop had access to Davis' mediation file on the former failed mediation of this case;

Former mediator, Barry Davis, had no access to Abel & Musser's litigation file on this case;

Abel & Musser had no financial interest in Davis' mediation of this case;

Abel & Musser did not participate in Davis' mediation of this case;

Other lawyers in the firm of Abel & Musser did not discuss this case with Davis;

Other lawyers in the firm of Abel & Musser had not and would not seek information gained by Davis during the failed mediation;

The only staff Davis had in common with Abel & Musser is the receptionist.

¶ 31 Upon a *de novo* review of the Affidavits submitted by Plaintiff, we conclude that Plaintiff's law firm sufficiently complied with the screening exception requirements of Rule 1.12 and may represent Plaintiff.

## X. Conclusion

¶ 32 We first hold that Davis is prohibited from representing Plaintiff under both the Code of Professional Conduct for Mediators and Rule 1.12 of the Rules of Professional Conduct for attorneys. We further hold that Rule 1.10 is not invoked. As Davis is disqualified under Rule 1.12, his disqualification is imputed to members of his firm. However, under Rule 1.12, Davis' firm may avoid imputed disqualification if it sufficiently screens Davis from participation in the matter and ensures Davis is apportioned no part of the fee. Plaintiff presented un-contradicted evidence of the firm's compliance with the screening exception requirements of Rule 1.12.

¶ 33 The Order of the trial court granting Defendants' Motion to Disqualify is reversed and the cause remanded for further proceedings consistent with this opinion.

HANSEN, J., concurs in result, and MITCHELL, P.J., concurs.