2016 OK CIV APP 24

**Robert Judson RADFORD,**
**Petitioner/Appellant,**

v.

**Melissa Jennings RADFORD,**
**Respondent/Appellee.**

**No. 113,908.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

March 11, 2016.

James R. Hicks, Caitlin J. Murphy, Joseph V. Allen, Barrow & Grimm, P.C., Tulsa, OK, for Husband/Appellant,

Melissa F. Cornell, Robertson Cornell, Tulsa, OK, for Respondent/Appellee.

BAY MITCHELL, Judge.

¶ 1 Petitioner/Appellant Robert Judson Radford ("Husband") seeks interlocutory review of the trial court's denial of his request to disqualify counsel representing Respondent/Appellee Melissa Jennings Radford ("Wife") when such counsel employed a paralegal who formerly worked for the *guardian ad litem* in the case. Because we find the paralegal was effectively screened from the case, the decision of the trial court is AFFIRMED.

¶ 2 Husband filed a petition seeking dissolution of his marriage to Wife in 2007. The divorce decree was entered December 12, 2008, but both parties agree intense litigation between them has continued nearly constantly since that time. In an attempt to resolve some of those issues, the court appointed Todd Alexander as *guardian ad litem* ("GAL") on May 1, 2012 for the parties' minor children. At that time, Toni Reed ("Ms. Reed") worked for the GAL as a paralegal. Ms. Reed's duties included working

on the Radford case. She attended the GAL's meetings with the minor children but did not sit in on any of the GAL's meetings with the parties. Her interactions with the parties mainly consisted of scheduling appointments and taking messages. Her employment continued until September 2014 when she took a position at the law firm of Wife's counsel, Robertson Cornell.

¶3 Robertson Cornell is a small firm which employs, in addition to its two lawyers, two paralegals and one other secretary. Melissa Cornell ("Ms. Cornell") began representing Wife July 18, 2013.[1] When Ms. Reed began her employment at Robertson Cornell in October 2014, Ms. Cornell instructed Ms. Reed that she was not to work on the Radford case. Ms. Cornell further instructed Ms. Reed not to share any confidential information regarding the Radford case she may have learned while working for the GAL. Even with these instructions, Ms. Reed notarized Ms. Cornell's signature on some pleadings filed in the Radford case and received an email from an assistant at the law firm of Wife's counsel, Barrow & Grimm, with a proposed pre-trial order attached. Ms. Reed testified she did not review any of the documents she notarized except for the signature page and that she was the only notary present in the office at the time notarization was needed. Ms. Cornell conceded to the trial court she failed to provide written notice to Husband's counsel or the court of Ms. Reed's employment. Wife testified that having to retain new counsel in this matter would cause significant harm to her mainly due to the cost of having a new lawyer become familiar with the case.

¶4 The pleadings Ms. Reed notarized were filed in the case beginning November 2014. Husband filed his disqualification motion February 5, 2015, which was a little over two weeks before the parties were scheduled for trial on Wife's motion to modify physical custody of the parties' minor children. Husband and his counsel concede Wife's counsel attempted to establish a "Chinese wall" to screen Ms. Reed from having any access to the Radford case but claim the attempt was not successful as evidenced by Ms. Reed's notarization of documents filed in the case and by her receipt of the email.[2] Husband further argues that the failure of Wife's counsel to give them or the court written notice of Ms. Reed's employment requires automatic disqualification regardless of whether the screening was satisfactory. At the evidentiary hearing following the parties' unsurprising inability to agree to stipulated facts, Husband testified Ms. Reed's employment with Robertson Cornell made him worried Wife would somehow gain access to confidential information shared with the GAL which he did not have access to. The GAL did not file a written report in this case but testified he revealed all of the information he had in the case at an earlier hearing in open court where both parties were present.[3] The GAL testified at the hearing on Husband's motion to disqualify and stated Ms. Reed would not have had access to any additional information following his prior testimony because she no longer worked for him.

¶5 Following testimony presented on behalf of both parties, the trial court ruled from the bench where she decided the case under Rule 1.12 of the Rules of Professional Conduct. The trial court stated it applied that rule because the GAL, Ms. Reed's former employer, was acting as a third-party neutral. The court went on to state that it found the screen set up by Robertson Cornell was sufficient even though Ms. Reed notarized some documents filed in the case because notarization did not require her to actually

1. Wife previously employed two other attorneys during the course of the litigation.

2. The parties presented conflicting testimony whether Ms. Reed solicited the email with the pre-trial conference order attached. Ms. Reed testified she simply received it without any prior notice or request and forwarded it to the other paralegal at Robertson Cornell responsible for the Radford case. Vicki Robertson, a paralegal at Barrow & Grimm, testified she called the main line at Robertson Cornell and was instructed by an unnamed individual to send the email to Ms. Reed.

3. The transcript reveals Husband's counsel issued a subpoena requesting that the GAL and Ms. Reed turn over any notes they had from their meetings with the children. The GAL filed a motion to quash and was apparently successful in his attempt.

review the substance of the documents, just the signatures pages. The court also refused to find that Robertson Cornell's failure to inform Husband or the court in writing about Ms. Reed's employment resulted in automatic disqualification of Ms. Cornell as counsel for Wife. The court relied on Oklahoma case law which sets the burden for disqualification very high. *E.g. Hayes v. Central States Orthopedic Specialists, Inc.*, 2002 OK 30, 51 P.3d 562. The trial court's ruling from the bench was followed by a written order which simply stated the court denied Husband's motion to disqualify Wife's counsel "for the reasons specifically set forth in open Court and contained within the record."

¶ 6 On appeal Husband questions whether the trial court's order contains requisite findings sufficient to support its order; whether the trial court abused its discretion in determining whether Wife's counsel effectively screened Ms. Reed; whether there was sufficient evidence to support the trial court's finding that Ms. Reed was effectively screened; and whether the trial court abused its discretion in denying the disqualification motion despite the failure of Wife's counsel to give written notice of Ms. Reed's employment.

### STANDARD OF REVIEW

■ ¶ 7 An order granting or denying a motion to disqualify counsel is a final order subject to appellate review under 12 O.S. § 953. *Miami Business Services, LLC v. Davis*, 2013 OK 20, ¶ 10, 299 P.3d 477. "When reviewing the order, we review the trial court's findings of fact for clear error and carefully examine *de novo* the trial court's application of ethical standards." *Id.*

### ANALYSIS

■ ¶ 8 "[T]he barrier a party must surmount to secure the disqualification of his opponent's counsel is high." *Hayes*, 2002 OK 30, ¶ 9, 51 P.3d 562. "While a party's right to choose his own counsel may be set aside under limited circumstances, a showing must first be made that declining to do so would threaten the integrity of the judicial process." *Id.* (Internal quotations and citations omitted.) The Rules of Professional Conduct

recognize conflicts of interest may arise from a third-party neutral's work in a matter resulting in the third-party neutral being prohibited from representing parties in the same matter. 5 O.S. Ch.1 Appx. 3–A, Rule 1.12.

¶ 9 Here, the GAL, Ms. Reed's former employer, acted as a third-party neutral. *See Rowe v. Rowe*, 2009 OK 66, ¶ 5, 218 P.3d 887 ("The role of a guardian ad litem in a custody dispute is to act as an arm of the court and to see to the best interest of the child. In custody matters [the GAL] has almost universally been seen as owing his primary duty to the court . . . not strictly to the child client."). As such, he would be prohibited from personally representing another party in this case unless all the parties consented in writing, but the disqualification would not necessarily extend to other lawyers in his firm. Rule 1.12 provides in pertinent part:

(a) [A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or law clerk to such a person, or as a mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.

(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this rule.

Ms. Reed is not a lawyer, but the Rules of Professional Conduct extend to nonlawyer assistants. 5 O.S. Ch.1 Appx. 3–A, Rule 5.3; *See also Hayes*, 2002 OK 30, ¶ 16, 51 P.3d 562. Accordingly, her employment at Robertson Cornell could result in Ms. Cornell's disqualification unless Ms. Reed was

screened and written notice was given as required in subsection (c)(2).

¶ 10 It is undisputed Ms. Cornell attempted to screen Ms. Reed from involvement in the Radford case, but Husband contends the screening was insufficient because Ms. Reed notarized documents filed in the case and received an email with a pretrial conference order attached. We are not persuaded by this argument. As noted by the trial court and as testified to by Ms. Reed, her role as a notary did not require her to review the substance of the documents she was notarizing. She merely attested that the signature was made by Ms. Cornell. Further, Ms. Reed's undisputed testimony revealed she forwarded the email to the assistant responsible for the Radford case and did not perform any work on it.

¶ 11 We are similarly unpersuaded by Husband's reliance on Texas case law to support his argument that there is a rebuttable presumption the nonlawyer assistant shared confidential information learned from prior employment. *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 834–35 (Tex.1994). We must first note that all of the cases cited by Husband involved situations where a nonlawyer assistant went to work for a law firm representing the opposing party. That is not the situation we are faced with here. Ms. Reed did not work for Barrow & Grimm before her employment at Robertson Cornell. Rather, she was employed by the GAL's law firm. There was no attorney-client relationship between the GAL and Husband to protect. *See Rowe, supra.* While GALs and other third-party neutrals may owe a duty of confidentiality, that duty is not the same as the attorney-client privilege. The GAL in this case had previously testified about his observations of the case and testified at the hearing in this matter that Ms. Reed did not have access to any additional information not already disclosed in open court.

■ ¶ 12 Further, we find no support in Oklahoma case law for the rebuttable presumption that client confidences were shared. Such a position would be contrary to our Supreme Court's admonition against a *per se* rule prohibiting a court's examination of the effectiveness of a screening device for non-lawyer assistants.

> [B]efore being disqualified for having hired a non-lawyer employee from its opponent, the hiring firm should be given the opportunity to prove that the non-lawyer has not revealed client confidences to the new employer and has been effectively counseled and screened from doing so. If such proof is made to the court's satisfaction, the court should deny the motion to disqualify the non-lawyer's new firm. *Hayes,* 2002 OK 30, ¶ 25, 51 P.3d 562.

The rule set forth in *Hayes* simply requires the new firm to demonstrate the nonlawyer assistant has not shared any confidences. There is no instruction the new firm must rebut the presumption the nonlawyer assistant has in fact shared such confidences. We agree with the trial court's conclusion that Ms. Reed was effectively screened, she did not share with her new employer any confidential information learned through her employment by the GAL, and her time was not billed to Wife.

■ ¶ 13 Ms. Cornell conceded she did not present written notice to Husband or the court regarding Ms. Reed's employment as required by Rule 1.12(c)(2). Husband argues this failure results in automatic disqualification regardless of whether the screening was effective. We cannot agree. As set forth in *Hayes,* Oklahoma law rejects a *per se* rule prohibiting a trial court from examining the effectiveness of the screen. *Hayes,* 2002 OK 30, ¶ 25, 51 P.3d 562. Following a thorough evidentiary hearing, the trial court found, and we agree, the screen established by Robertson Cornell was sufficient. Further, we note Husband testified it was his review of the pleadings notarized by Ms. Reed which put him on notice of her change of employment. Such pleadings began to be filed in November 2014, some three months before the motion to disqualify was filed. Ms. Cornell was not attempting to hide the fact Ms. Reed worked for her. While we do not find Husband waived his right to file such a motion, the timing is certainly suspicious given the looming trial date. *See Hayes,* 2002 OK 30, ¶ 10, 51 P.3d 562 (noting cases "that have recognized waiver as a basis for denying

motions to disqualify is the need to insure that such motions are not used for strategic purposes"); 5 O.S. Ch.1 Appx. 3–A, Scope, ¶ 20 ("[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons."). Under the facts and circumstances of this case, including the finding an effective screen was established, failure to give written notice of the non-lawyer assistant's new employment does not result in automatic disqualification.

¶ 14 The trial court's decision to deny Husband's motion to disqualify Wife's counsel was supported by sufficient evidence. The trial court correctly applied Rule 1.12 of the Rules of Professional Conduct in an articulate ruling from the bench, which was specifically referenced in a later-filed written order. Accordingly, the decision of the trial court is AFFIRMED.

BUETTNER, V.C.J., P.J., and GOREE, J., concur.